## GEORGE C. AUKAM *vs.* OTWAY B. ZANTZINGER.

*Mortgage Sales—When and by Whom Exceptions May be Filed—Exceptions Need Not be Signed by a Solicitor—Resale at Risk of First Purchaser—Ratification of Sale While Exceptions Pending.*

A person interested in property sold under a power of sale in a mortgage has a right to file exceptions to the sale in his own name, without having the same signed by a solicitor of the Court.

When a mortgage sale is reported to a Court of equity for ratification as directed by statute, exceptions thereto may be filed at any time before the sale is ratified, although after the day fixed in the order of ratification *nisi* for showing cause against the sale.

A party interested in property sold under a mortgage, who has voluntarily withdrawn exceptions filed by him to the ratification of the sale, has the right to renew his objections by subsequently filing exceptions at any time before the final ratification of the sale.

When the purchaser of property at a mortgage sale makes default in payment and the property is resold, under an order of Court, at his risk, he is entitled to any excess in the proceeds at the resale just as he is responsible for any deficiency, and being therefore a person interested in the property is entitled to file exceptions to the resale as reported.

And upon such resale the original mortgagor has no interest in the property and is not entitled to except to the ratification of the sale.

Property mortgaged by Fred. G. A. was sold under foreclosure to George C. A., and upon his default in making payment, a resale was ordered to be made at his risk. Upon the resale Fred. G. A. excepted to its ratification and Geo. C. A. also filed exceptions. These latter were withdrawn. The exceptions of Fred. G. A. were overruled, but the sale was not then ratified. Subsequently and before the ratification the exceptions of Geo. C. A. were again tendered to the Clerk of the Court, who at first refused to accept them on the ground that they were not signed by a solicitor, but afterwards, and on the same day on which the sale was ratified, they were accepted by the Clerk. Upon a petition filed within thirty days to vacate the order of ratification. *Held,*

1st. That the petitioner and exceptant is not precluded from renewing his objections to the sale merely because he had once withdrawn them after being filed, and his rights could not be passed upon under the excep_ tions filed by Fred. G. A.

2nd. That the order of ratification should be annulled so that the questions raised in the exceptions offered by the petitioner before the order was passed may be adjudicated.

Appeal from an order of the Circuit Court for Prince George's County (MERRICK, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*D. W. Baker* and *George P. Hoover*, for the appellant.

*F. Snowden Hill* and *Phil. W. Chew*, for the appellee.

BOYD, J., delivered the opinion of the Court.

There was a motion to dismiss the appeal in this case but, as intimated at the oral argument, we think the affidavits filed sufficiently show that the appellant was not responsible for the delay in transmitting the record to this Court and the motion will therefore be overruled.

The appeal was taken from an order refusing to vacate an order of ratification of a resale made by Phil. H. Tuck, an attorney named in a mortgage given by Frederick G. Aukam and wife to German H. Hunt, and dismissing the petition filed seeking that and other relief. A sale of the mortgaged property to the appellant for $5,951.00 was duly ratified, and on the day of the sale he paid $200 on account of the purchase money. Afterwards Mr. Tuck filed a petition alleging that the appellant had failed to make any other payment, as required by the terms of sale, and praying that he be compelled to pay the purchase-money, and on default thereof that the property be sold at his risk. An order was passed directing the attorney to resell the property, at the risk of the appellant, and on July 11, 1899, he reported a sale to the appellee for

the sum of $6,925. Frederick G. Aukam excepted to the ratification of it and testimony was taken and it was set for hearing on the 16th of November, 1900, On that day Mr. Tuck, the attorney, and Mr. Zantzinger, the purchaser, questioned the right of Frederick G. Aukam to object to the sale and exceptions were then filed by the appellant. There was some intimation that the exceptions thus filed would necessitate a further delay and probably a retaking of the testimony, and on the 17th of November, 1900, one of the solicitors for the Aukams wrote to the Judge before whom the case was pending, and also to one of the solicitors for the appellee, stating that the exceptions of George C. Aukam would be withdrawn and that they would stand on those of F. G. Aukam and an order was filed dismissing those of George C. The Judge subsequently filed an opinion in which he determined that F. G. Aukum had no standing in Court to object to the sale, and also discussed the merits of the objections filed. On the 21st of February, 1901, he passed an order "that the said exceptions be and they are hereby overruled and dismissed with costs to the defendants," but did not ratify the sale. On March 15th, 1901, F. G. Aukam for George C. Aukam tendered exceptions to the sale to a deputy clerk of the Court, which were refused by him on the ground that they were signed by George C. Aukam individually, and not by a solicitor. According to the affidavit of Mr. Bowie, a member of the bar of Prince George's County, he was called upon by F. G. Aukam, who informed him that the deputy clerk had refused to file the exceptions, and he then went to the clerk's office with F. G. Aukam and found the sale had not been ratified, but he hesitated to sign the exceptions in the absence of the attorneys who appeared of record. Mr. Bowie informed the Judge he had the exceptions in his possession and afterwards went to the clerk's office the same day and found that an order of Court had in the meantime been filed, ratifying the sale. That order is dated the 15th of March, 1901, and the same day the deputy clerk accepted the exceptions signed by George C. Aukam in person, but not until after he

had filed the order of Court ratifying the sale.    This petition was afterwards filed by the appellant, which was sworn to by him and accompanied by three affidavits as to the offer of the exceptions to the deputy clerk, etc.    An order was passed setting it down for hearing and, after requiring security for costs to be given by the appellant, the appellee filed an answer in which it is admitted that the exceptions were offered to the deputy clerk before the sale was ratified but it alleges they were properly refused.

1.    The first question that arises is whether the deputy clerk was right in refusing to file the exceptions when presented to him.    It is conceded that there is no rule of the Circuit Court for Prince George's County authorizing or regulating the filing of chancery papers not signed by a solicitor.    In *Cross* v. *Cohen*, 3 Gill, 257, it was said :    "It is an universal rule of practice in chancery, that exceptions like other formal papers filed in the cause, must be signed by a solicitor of the Court. If a bill is not thus signed it may, in any stage of the cause, be taken off the files of the Court, 2 Mad. Ch. 167.    So of an answer.    *Ib.* 331.    A plea must in like manner be signed. *Ib.* 295.    And so must an exception.    *Ib.* 346."    The Court was then referring to exceptions to testimony and as those in the case were not signed by any one, it was unnecessary to determine what papers must be signed by a solicitor.    But as that case was decided at the December term, 1845, it is not necessary for us to determine whether the statement above quoted was too broad, when made.    The case has since been frequently referred to with approval by this Court to show that unless exceptions to testimony are filed, plainly indicating the witness and the evidence objected to, an objection to the competency of the witness or the admissibility of the evidence will not be considered by this Court.

But without meaning to determine that even at this time such a paper as a bill in equity, or an answer to one, is in proper form, if not signed by a solicitor, unless authorized by rule of Court or a statute, it cannot be doubted that there is now greater latitude allowed litigants, in that respect, in the

Courts of this State than was formerly the case either here or in England. In *Kent* v. *Ricards*, 3 Md. Ch. 395, the Chancellor quoted with the approval from *Henck* v. *Todhunter*, 7 H. & J. 275, "that by the law and practice of the Courts of this State a party might appear either *in propria persona* or by attorney." The eleventh equity rule adopted by this Court (now sec. 126 of Art. 16 of the Code) by clear implication authorizes an appearance *in propria persona.* Rule 52 (sec. 166 of Art. 16) permits the party himself to sign a petition for a rehearing of decrees or decretal orders. Rule 49 (sec. 186 of Art. 16) expressly allows parties to agree in person to a special case stated ; and other instances might be given. The second rule of the Court of Chancery provided that any petition or writing filed and addressed to the Court, certified as therein stated, "shall have the same effect as if signed and filed by a solicitor or delivered by the person to be filed." *Alexander's Ch. Pr.*, 366. That rule has in substance, been adopted in Baltimore City and many of the counties. It may not always be good practice, but it is undoubtedly true that papers of a more formal character than exceptions to sales are now often filed in the equity Courts in this State, signed by the parties themselves, and not by a solicitor, and unless there be some rule of Court prohibiting him from filing them, it certainly ought not to be left to the judgment of the clerk whether a paper offered by a party to the cause shall be filed. If it is an invalid or improper paper the opposite party can move to have it stricken from the files, or demur, as he may be advised is proper.

But whatever may be regarded the proper practice in formal equity proceedings, there would seem to be no room to question the right of a party interested in property sold under a power of sale in a mortgage to file objections to the sale, without having a solicitor to sign them. If a mortgagee or other person authorized to sell knows how to conduct the proceedings, he can undoubtedly do so without the aid of a solicitor. He reports the sale to the Court and we never heard it suggested that his report must be signed by a solici-

tor. The petition of Mr. Tuck to have this property resold, at the risk of the appellant, was signed by him individually, and not by a solicitor for him. The fact that he is a solicitor of the Court could make no difference, as the proceedings were not conducted by him as solicitor, but as the attorney named in the mortgage, and any one who is not an attorney at law can be so named, as well as one who is. The report of sale was also signed by him in his own name, which was, of course, proper. Upon what principle then should a party interested in the property not have the privilege of objecting in his own name, to a sale so made? A mortgagor who is being sold out may be so unfortunate as not to be able to employ a solicitor, and, if he cannot object to a sale, his property may be sacrificed and great injustice done him. It is possible that a litigant may offer a paper which is so clearly improper as would justify the clerk in refusing to file it, but there is nothing of that character in these exceptions, and the deputy clerk ought to have filed them when they were first presented to him. There certainly could be no valid reason for refusing them before the sale was ratified, and accepting them after the order was passed.

2. Under the statute (sec. 9 of Art. 66 of the Code), in a sale of this character, there should be the same proceedings on the report as if made by a trustee under a decree of Court, " and the Court shall have full power to hear and determine any objections which may be filed against such sale by any person interested in the property, and may confirm or set aside said sale." A time is fixed in the order of ratification *nisi*, by which cause can be shown why it shall not be ratified. " If, however, after that day, but before final ratification, objections to the sale shall have been filed, they have never been considered as coming in too late to be heard." *White* v. *Malcolm*, 15 Md. 547. " Until the final ratification, a sale, made by order of a Court of equity, is an executory contract, open to objection, and will not be enforced, if it is inequitable and against good conscience to do so." *Hunting* v. *Walter*, 33 Md. 62. These exceptions were therefore offered in time, as the sale had not been ratified.

3. The appellant was unquestionably a "person interested in the property," and therefore could object to the resale, unless he is estopped or has waived his right to do so, which we will consider later. "The proceedings for a resale, after final ratification, treat the first contract as binding on the original purchaser. The property is resold as the property of the defaulting purchaser, and at his risk. He is therefore entitled to any excess in the proceeds of sale at the resale, just as he would be responsible for any deficiency." *Miller's Eq. Proc.*, 620 (sec. 526), and cases cited. The statute requiring sales under powers in mortgages to be reported to the Court having chancery jurisdiction where the sale is made provides that "there shall be the same proceedings on such report as if the same were made by a trustee under a decree of said Court." When the sale is reported the jurisdiction of the Court becomes complete, and thereafter is governed by such equitable principles and rules as are applicable to sales under decrees in chancery. *Wilson* v. *Watts*, 9 Md. 459; *Cockey* v. *Cole*, 28 Md. 283; *Warfield* v. *Dorsey*, 39 Md. 307; *Warehime* v. *Building Association*, 44 Md. 517. Among the important powers connected with sales vested in Courts of equity is the right to enforce the payment of the purchase-money, and one of the most effective ways to accomplish that is a resale of the property, at the risk of the purchaser. Under the statute above referred to and from what has been said by this Court in numerous cases of sales under powers in mortgages, there can be no doubt that a Court of equity has the power to order a resale of property sold under such a power and reported to and ratified by the Court, on failure to pay the purchase-money.

4. It would seem to be clear from what we have said that F. G. Aukam had no interest in this property when it was resold, and he therefore had no standing to object to the sale. The fact that the appellant bought it to protect, or for the benefit of, his father, could make no difference. The purchaser accepted by the attorney making the sale was George C. Aukam and to him alone could he look for the purchase-money, under this proceeding. Whatever arrangement he and his father

made was merely between them and could in no way affect the right of the attorney making the sale to hold him responsible for the purchase-money, and he alone is liable for any deficiency and entitled to any surplus that there may be as the result of the resale. The Court had no power to set aside the sale at the instance of F. G. Aukam, as it rightly determined, and therefore any expression of opinion on the merits, under the objections filed by him, ought not to preclude one who is interested and had the right to object to the ratification of sale. If there had been an appeal from that decision it would have been affirmed on the ground that the exceptions were not filed by one authorized to object to the ratification of the sale, and the merits were therefore not involved.

5. Inasmuch then as the exceptions were offered to the Deputy Clerk before the sale was ratified and the appellant was prevented from having the benefit of them by his unauthorized act, and, as the petition to strike out the order ratifying the sale was filed within thirty days from the time it was passed, the Court below ought to have granted the petition. The petitioner was not precluded from renewing his objections merely because he had filed them and then withdrew them. They were not filed until the day the case was set for hearing and not then until there had been objections made to the exceptions of F. G. Aukam. They were withdrawn according to the allegations in the petition, without the knowledge of the appellant, and because the solicitors were of the opinion that the question intended to be presented could be under the exceptions of F. G. Aukam. Under those circumstances we do not think the appellant was estopped from renewing them at any time before the sale was ratified, as his rights had not been, and could not be, passed on under the exceptions filed by his father. Nor do we think there was any impropriety in renewing them, especially when the form of the order of the Court is considered. It only overruled the exceptions of F. G. Aukam and did not ratify the sale—thus leaving that question open and the appellant might well have assumed it was purposely left open. But, however that may be, the fact is

that the sale was not ratified and the appellant, or any one in-terested in the property, had the right to file exceptions until it was, and the Court below ought not to have ratified it when it did, if informed that the exceptions had been offered to the Deputy Clerk who had refused to file them, and, if not then so informed, ought to have vacated the order as prayed for in the petition because the appellant had improperly been de-nied the privilege of filing them at the time·he had the right to do so.   The order refusing and dismissing the petition must be reversed.

*Order reversed and cause remanded,*
*the appellee to pay the costs in this*
*Court, the costs below to abide the*
*final result of this proceeding.*

(Decided January 17th, 1902.)