JOHN F. PARLETT, City Collector, and JOHN M.
D. HEALD, Trustee, *vs.* FERDINAND C. DUGAN,
Trustee.

*Taxation—Priority of Payment of Taxes When an Assignment for
the Benefit of Creditors is Made—Leasehold Property of Assignor
not Accepted by the Trustee—Lien of Taxes—Costs.*

Taxes are not *per se* liens, either on the property taxed or other prop-
erty of the person owing them, but the Legislature has the power to
make taxes liens and give them priority of payment and this power
has been exercised in a number of cases.

When a trustee for the benefit of creditors, to whom a debtor's whole
estate has been assigned, refuses to take possession of certain lease-
hold estate, as he has a right to do, taxes due on such property are
not entitled to *priority* of payment out of the funds in the hands of
the trustee, derived from other sources, when both State and city
are amply protected by liens for the taxes on the property itself.

The owner of an undivided half interest in certain leasehold property
made an assignment for the benefit of his creditors. Taxes and
ground rent on the property were in arrear for two years. The
trustee under the deed refused to take possession of the leasehold
interest because without benefit to the trust estate. The collector
of State and city taxes and the owner of the reversionary interest in
the property filed petitions asking that the trustee be required to pay
the taxes out of the funds in his hands, which were derived from
other property belonging to the assignor. *Held*,

1st. That neither the collector nor the reversioner had the right to ask
that the taxes be paid by the trustee out of such funds, as prior
liens.

2nd. That under Code, Art. 81, sec. 64, amended by the Act of 1892,
chap. 518, a trustee for creditors is required to pay by way of pref-
erence only the taxes due on the property of the debtor taken pos-
session of or sold by him, and not *all* taxes due by the debtor, or
taxes on property which he does not accept for the estate.

When it is proper that the Court should be asked to decide whether
certain taxes are entitled to priority of payment out of the funds in
the hands of a trustee for the benefit of creditors, it will be ordered
that the costs of the case be paid out of such funds, although it is
held that the taxes are not entitled to priority.

Appeal from a *pro forma* order of the Circuit Court of Baltimore City.

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD and RUSSUM, JJ.

*George Whitelock* (with whom were *Thos. Ireland Elliott, City Solicitor,* and *Samuel D. Schmucker* on the brief), for the appellants.

*Joseph W. Hazell,* for the appellee.

BOYD, J., delivered the opinion of the Court.

This appeal was taken from a *pro forma* order of the Circuit Court of Baltimore City sustaining a demurrer to the petitions of John F. Parlett, collector of State and city taxes for Baltimore, and of John M. D. Heald, trustee, which asked the Court to require Ferdinand C. Dugan, trustee of George C. Nicholas, to pay certain State and city taxes out of funds in his hands. The two petitions were consolidated by order of the Court. They allege that on the first day of October, 1867, a certain lot of ground on Postoffice avenue, in the city of Baltimore, was leased for the term of ninety-nine years at the annual rent of $990, payable quarterly, free and clear of all deductions for taxes, etc., and the lease contains a covenant on the part of the lessee, his assigns, etc., to pay the taxes. The reversionary interest became vested in the petitioner, Heald, in trust for certain children of Adaline Spurrier, and on the 28th day of November, 1893, George C. Nicholas became the owner of the leasehold interest. On the 18th day of May, 1895, Nicholas assigned to Mary N. Forman an undivided half interest in the leasehold, and on the 24th day of May, 1896, he executed to the appellee a general deed of assignment of all his property in trust for the benefit of his creditors. On the first day of May, 1896, at the instance of Mary N. Forman, a receiver was appointed to take charge of the leasehold property, collect the rents and pay

the charges thereon until the further order of the Court. The receiver had in hand when the petitions were filed $812.15, whilst the ground rent due October first, 1896, amounted to $815, and the State and city taxes for 1894, 1895 and 1896 were still unpaid—amounting to $1,428.68 for the three years. The appellee refused to enter into possession of Nicholas' interest in said leasehold property and rejected it "as being without benefit to his trust estate." The petitions further allege that the appellee had in hand funds of the estate of Nicholas far more than sufficient to pay the taxes. The question intended to be raised is, whether under these circnmstances the State and city taxes on the leasehold property must be paid out of the funds in the hands of the trustee, which were received from other parts of the estate?

It is conceded that the taxes for 1896 cannot be collected by this proceeding, but those for 1894 amount to $498.09 and for 1895 to $460.96, and the appellants claim that they should be paid. Although at the time of the assignment Nicholas only owned a one-half interest in the property, there is nothing in the record to show when the levy for 1895 was made, and therefore we do not know whether Mary N. Forman was the owner of the half interest then or whether she became such after the levy. Nor is there anything to show from what the fund in the hands of the trustee was derived, although we presume from the argument of counsel that most, if not all, of it was from collections or the proceeds of sales of personal property. By section 47 of Art. 81 of the Code all State, county and municipal taxes are made liens on the real estate of the party indebted from the time they are levied, but they are not made liens on personal property. Although the Legislature has broad powers in making taxes liens either on the property taxed or other property, they are not liens merely because they are taxes, but must be expressly made so by legislation. The Legislature of the State has given taxes priority over other debts in a number of instances. Administrators are

required by section 65 of Art. 81 of the Code to pay all
taxes due by their decedents as preferred debts, to the ex-
clusion of all others, except funeral expenses.   By section
64 of that Article when a sale of either real or personal
property was made by any ministerial officer, under judicial
process or otherwise, all sums due and in arrears for taxes
from the party whose property was sold were required to
be first paid and satisfied, but by the Act of 1892, chapter
518, that section was so amended as to only require the
taxes on the particular property sold to be paid out of the
proceeds of sale.   Section 15 of Art. 47, amended by the
Act of 1896, chapter 184, in giving priority to certain wages
and salaries expressly reserved from the effect of the pref-
erence all proper and legitimate costs, expenses, *taxes*, etc.
But there is no statute which makes the taxes now in con-
troversy a lien on the fund in the hands of the trustee, nor
is there any statute which expressly gives them priority
over other claims in the distribution of that fund.

It is contended, however, that, at least so far as the State
taxes are concerned, the priority in no wise depends upon
a lien in favor of the State, but it is by virtue of its prerog-
ative right derived from the common law entitling her to be
first paid, excepting only where some antecedent lien stands
in the way.   It is true that it has been the settled law of
Maryland for many years that such a right does ordinarily
exist in favor of the State.   In the case of *State* v *Bank*, 6
G. & J. 226, CHIEF JUDGE BUCHANAN, in delivering the
opinion of the Court, gave as a reason why this should be
so that " the government of the State is established for the
good of the whole and can only be supported by means of
its revenues ; which revenues the good of the whole requires
to be protected.   And as it can only act by its agents, who,
no matter how vigilant, cannot always be present to protect
its rights, a priority in the payment of its debts (which must
always be of a public nature) is necessary to enable it to
accomplish the ends of its institution." · But if it be con-
ceded that the State has such priority in the distribution of

*all* of an insolvent's estate, and if that doctrine be extended so far as to include the city taxes, should it be applied to a case like this ?  Although the tax collector did file a petition, it was consolidated with that of the holder of the reversion of the property from which these taxes are due.  It is virtually a contest between the owner of that reversion and the general creditors of Nicholas.  The reasoning of JUDGE BUCHANAN in the above cited case does not apply to this, because the property primarily liable for these taxes is still in existence, unsold and ample for the payment of them. When the deed of trust was made the property was in the hands of a receiver, who was and has since been collecting rents.  If Nicholas has not made an assignment, the tax collector could on proper application have had the net income applied to the payment of the taxes due, and if the leasehold estate cannot earn the taxes, ground rent and other proper expenses the Court should and doubtless would discharge the receiver or direct the leasehold interest to be sold, if possible, or surrendered to the reversioner if a sale be impossible and he desires possession.  But as the trustee of Nicholas has refused to accept the property and has not received anything from it, in the absence of a statute requiring it, we can see no valid reason for allowing priority in favor of the taxes in the distribution of the fund in the hands of the trustee, when both State and city are amply protected by the lien on the property from which the taxes are due. It is true that by the statute the person holding the leasehold estate is required to pay the taxes levied on the demised premises, and in this case the lease also required that, but the whole property and not merely the leasehold interest is liable to the State and city for the taxes.  It may be that Mary N. Forman is responsible for one-half of the taxes of 1895, and if that be so, it is another reason why all of them should not be paid out of the fund.  It is suggested on the part of the appellants that the trustee would have his remedy against her, but a trust fund should not be subjected to the costs and possibly ultimate loss that might be in-

curred by such payment, unless the law clearly impose such burden on it. If she is peculiarly responsible, the reversioner can proceed against her for whatever ground rent or taxes she may be liable for. He can also file his claim against Nicholas, and receive his proper distribution from the fund in the hands of the trustee.

The case of the *Casualty Insurance Company*, 82 Md. 563, so much relied on by the appellant, differs materially from this. The taxes there due were on the shares of stock of the company, which, by the statute, it was required to pay, and they were made a lien on the stock. The stock represented all the assets and property of the corporation, and the corporation and the property were liable for the taxes. The receivers were dealing with all the property—certainly all in Maryland, not only a part—and in the distribution of the proceeds of sales and collections, we held that the taxes must be paid. But in this case the facts and circumstances are altogether different.

*In re Lewis*, 81 N. Y. 421, the Court of Appeals of New York refused to require the trustee to pay taxes to certain mortgagees who were seeking to have the taxes due on the mortgaged property paid by the trustee out of the funds in his hands. Whilst the Court declined to determine whether the State itself could successfully assert a claim to a preference over other creditors, it did reject the claim of the mortgagees who occupied the same position to the common fund that Mr. Heald does in this case. As the petitions were consolidated, Mr. Heald is a party to the proceedings now seeking to subject this fund to the payment of taxes, and it is manifest that the claim is being urged by him, or at his instance, as it would make but little difference to the tax collector whether the taxes are paid out of this fund or out of other property. It is clear that Mr. Heald has no right to demand that this preference be given, and the demurrer was properly therefore sustained to his petition. But we think the tax collector's petition was also properly dismissed, and in addition to the reasons we have already

given we might refer more at length to the Act of 1892, chapter 518, amending section 64 of Art. 81, which indicates the intention of the Legislature to confine the priority and payment of taxes to the proceeds of the sales of the property from which such taxes are due, unless, of course, specially provided for by some other law.    For many years the statute required the party selling to pay *all* taxes due and in arrear from the party whose property was sold, but the Act of 1892 amended it so as to only require payment of the taxes due and in arrear on the property sold.    That section of the Code is not only applicable to sales by trustees appointed by decrees of Courts of Equity, but also to those made by trustees under wills (*Gould, Trustee,* v. *Mayor, etc., of Baltimore,* 58 Md. 46), and under deeds of trust (*Hebb* v. *Moore,* 66 Md. 167).    As the trustee refused to accept the leasehold property, as he had a right to do, as was decided in *Horwitz* v. *Davis,* 16 Md. 316, the taxes that would seem to be contemplated by the Act of 1892, as properly payable by him, are those on the property taken into his possession, and not on that property which he not only did not sell but refused to accept.

As it was proper that both of the trustees, who are parties to this proceeding, should have this question determined by the Court, we will direct the costs to be paid out of the estate of George C. Nicholas, in the hands of the appellee, but must affirm the order of the Court below dismissing the petitions.

> *Order affirmed.    Costs to be paid out of the estate of George C. Nicholas, in the hands of the appellee.*